**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

**DD and NICOLE HAKIM, n/k/a NICOLE REYNOLDS,**

                                        **Plaintiffs,**

            *- against -*

**LINCOLN HALL, et al.,**

                                        **Defendants.**

---

**09 Civ. 860 (CS)(LMS)**
**09 Civ. 861 (CS)(LMS)**


**REPORT &**
**RECOMMENDATION**


**TO:  THE HONORABLE CATHY SEIBEL, U.S.D.J.**

Plaintiffs DD and Nicole Hakim bring these related actions against Defendants Lincoln Hall, Lincoln Hall Ives School ("Ives School"), Dr. Frank McGowan ("McGowan"), Robert Hanley ("Hanley"), Terrence Thompson ('Thompson"), Robert McEvoy ("McEvoy"), Aldo Porco ("Porco"), Kay Rice ("Rice"), Christine Hickey ("Hickey"), Shawn Brown ("Brown"), individually and in their official capacities, and Marcus Fraser ("Fraser"), individually, asserting myriad federal claims under Title VII, the Rehabilitation Act, the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 1983, as well as various state law claims involving tort and labor law violations.  See Pl. DD's Amended Complaint, Docket # 47 and Pl. Hakim's Amended Complaint, Docket # 31.  In lieu of an Answer, Defendants Lincoln Hall, Ives School, McGowan, Hanley, Thompson, McEvoy, Porco, Rice, Hickey, and Brown move pursuant to Fed. R. Civ. P. 12(b)(6) to dismiss the amended complaints in their entirety.  Docket # 49 and 33, respectively.

For the reasons that follow, I conclude, and respectfully recommend that Your Honor should conclude, that Defendants' motion to dismiss should be granted as it regards Plaintiffs'

federal claims.  Accordingly, I conclude, and respectfully recommend that your Honor should conclude, that this Court should decline to exercise supplemental jurisdiction over Plaintiffs' state law claims, and those claims should be dismissed as well.  Should Your Honor disagree and maintain jurisdiction over Plaintiffs' state law claims, I conclude, and respectfully recommend that Your Honor should conclude, that Defendants' motion to dismiss Plaintiffs' state law claims should be granted as well.

**FACTS**

For purposes of this motion, the Court accepts as true the following facts taken from Plaintiffs' Amended Complaints.  Additionally, as the facts contained in Plaintiff DD's Amended Complaint are identical to the facts contained in Plaintiff Hakim's Amended Complaint, in the interest of efficiency, references will only be made to Plaintiff DD's Amended Complaint.

Defendant Lincoln Hall is a not-for-profit corporation organized under New York state law and licensed by the New York State of Office of Children and Family Services to provide residential care and services to adolescent males who have been adjudicated Persons in Need of Supervision or Juvenile Delinquents by New York State Family Courts.  Pl. DD's Amended. Comp., ¶ 25, 27-29.  To that end, Defendant Lincoln Hall maintains the Ives School, a "designated institution school," to provide said services to these adolescent males. ¶ 26, 28. Defendants Lincoln Hall and/or the Ives School receive approximately $400,000 annually from the New York State Department of Education, as well as additional federal funding.  ¶ 30.  The named Defendants, aside from Defendant Fraser, are employees of the Ives School and hold various positions as either therapists, counselors, principals, or security personnel.  ¶ 32-39.

Plaintiff DD was hired by Lincoln Hall and/or the Ives School in August of 2005, as a school guidance counselor.  ¶ 44.  Plaintiffs believe that at the time they were hired, the Ives School had a policy of not admitting sexual or violent offenders.  ¶ 45.  At some point, the New York State Office of Children and Family Services started a parole-type service for juveniles after they are removed from facilities such as the Ives School.  ¶ 46.  This resulted in the juveniles staying at the Ives School for shorter periods of time, which correspondingly resulted in the Ives School losing money.  ¶ 47-48.  To remedy their financial issues, all of the named Defendants, aside from Defendant Fraser, changed their policy and began admitting violent or sexual offenders.  ¶ 49.  Plaintiffs requested safety training and their requests were denied.  ¶52, 54.  Plaintiffs also reported to their superiors the existence of an inappropriate relationship between Defendants Thompson and Hickey.  ¶ 148.  As a result, Defendants Thompson and Hickey became hostile toward Plaintiffs and moved Plaintiffs' offices to the third floor, which had less security than did their previous office locations.  ¶ 99-100.

On September 17, 2007, Plaintiff DD met with Defendant Fraser in her office for a consultation.  ¶ 60.  As Defendant Fraser was leaving Plaintiff DD's office, Fraser slammed Plaintiff's office door shut and assaulted Plaintiff.  ¶ 62, 68-75.  Plaintiff Hakim heard Plaintiff DD screaming and came into Plaintiff DD's office, at which point Fraser ran out of Plaintiff DD's office.  ¶ 77-78.  Plaintiff DD sustained physical and emotional trauma.  ¶ 83.  Subsequent to the attack, Plaintiffs discovered that Fraser had a history of sexually inappropriate behavior.  ¶ 66.  As a result of the attack, Plaintiffs were unable to return to work and were ultimately discharged on January 17, 2008.  ¶ 159-160.

Plaintiffs filed complaints with the Equal Employment Opportunity Commission

("EEOC") on June 23, 2008, and August 28, 2008, alleging gender discrimination and retaliation under Title VII.  Defts' Mot. To Dismiss, Ex. C, D.  At some point, Plaintiffs also initiated a civil state action against Defendants.  Pls' Opp., Ex. E.  On November 6, 2008, the EEOC issued right to sue letters to Plaintiffs.  Pls' Opp., Ex. L, M.  On January 30, 2009, Plaintiffs filed complaints in this Court.  Dockets # 1.  Defendants filed a motion to dismiss the action on May 5, 2009.  Docket # 31, 21.  On June 22, 2009, Plaintiffs filed Amended Complaints.  Docket # 47, 31.  Defendants filed a second motion to dismiss the action alleging that dismissal is warranted on both procedural and substantive grounds.  Docket #49, 33.

## DISCUSSION

### I.    Standard for Motion to Dismiss

Federal Rule of Civil Procedure 8(a)(2) requires the complaint to set forth a "short and plain statement of the claim showing that the pleader is entitled to relief."  Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Fed. R. Civ. P. 8(a)(2)).  The complaint must include something more than "an unadorned, the-defendant-unlawfully harmed-me accusation."  Id.

When considering a defendant's Rule 12(b)(6) motion to dismiss, "a judge must accept as true all of the factual allegations contained in the complaint," Erickson v. Pardus, 551 U.S. 89, 94 (2004) (citations omitted), and must draw all inferences from those allegations in the plaintiff's favor.  Chambers v. Time Warner, Inc., 282 F.3d 147, 152 (2d Cir. 2002).  However, a court is not required to accept as true legal conclusions, and "[t]hreadbare recitals of a cause of action, supported by mere conclusory statements, do not suffice."  Iqbal, 129 S. Ct. at 1949.

Prior to the Supreme Court's ruling in Iqbal and Twombly, a Rule 12(b)(6) motion to dismiss  would not have been granted unless "it appeared beyond doubt that the plaintiff [could]

prove no set of facts in support of his [or her] claim which would entitle him [or her] to relief."
Conley v. Gibson, 355 U.S. 41, 45-46 (1957).  In Twombly, the Supreme Court explained that
"Conley's 'no set of facts' language has been questioned, criticized, and explained away long
enough," Bell Atl. Corp. v. Twombly, 550 U.S. 544, 562 (2007), since a literal reading of that
language would enable a conclusory statement of claim to survive a motion to dismiss
"whenever the pleadings left open the possibility that a plaintiff might later establish some 'set of
[undisclosed] facts' to support recovery." Id. at 561.  The Court has not concluded that, to
survive a motion to dismiss, a complaint must set forth sufficient facts to "state a claim to relief
that is plausible on its face." Iqbal, 129 S. Ct. at 1949 (internal quotation marks and citation
omitted).  A claim is facially plausible when the complaint contains enough facts to allow the
court to reasonably infer that the defendant is liable for the alleged misconduct. Id.  Put another
way, a plaintiff must set forth enough facts to "nudge [his or her] claims across the line from
conceivable to plausible." Twombly, 550 U.S. at 570.

II.    **Claims**

In the interest of both clarity and efficiency, Plaintiffs' claims are addressed out of order
from how they were numbered within the Amended Complaints.  Plaintiffs' federal claims will
be addressed first, followed by Plaintiffs' state claims.

A.    **Plaintiffs' Federal Claims[1]**

1.    **Count I: Gender Discrimination Claims[2]**

---

[1] Plaintiff DD and Plaintiff Hakim's federal claims are substantially identical.  Therefore, they will be addressed simultaneously, although certain of the discussions apply individually.

[2] Plaintiffs made a tangential reference to § 1983 within Count I in paragraph 135. Because the rest of the Count refers to Title VII and Plaintiffs bring a claim under § 1983 in

42 U.S.C. § 2000e-2 prohibits employers from discriminating against persons based on their gender.  42 U.S.C. § 2000e-2 (2003).  Prior to filing a federal complaint alleging violations of this section, also referred to as Title VII, claimants are required to seek redress with the EEOC.  See Butts v. City of New York Dep't Of Hous. Pres. and Dev., 990 F.2d 1397, 1401 (2d Cir. 1993).  In New York, complaints must be filed with the EEOC, or the New York State Division of Human Rights, within 300 days of the alleged discriminatory conduct.  Id.  Claims that are not filed within the 300 days are time-barred from federal review.  Id.  The phrase "employment practice" contained within 42 U.S.C. 2000e-2 applies to a "discrete act or single occurrence, even when it has a connection to other acts."  Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 111 (2002).  In determining timeliness, "a discrete retaliatory or discriminatory act occurred on the day that it happened."  Id. at 110.  "Discrete acts that fall within the statutory time period do not make timely acts that fall outside the time period," even when they are related.  Id. at 112.  "Each discrete discriminatory act starts a new clock for filing charges alleging that act."  Id. at 113.  While the statutory time period to file a charge with the EEOC can be subject to equitable tolling, the courts are to apply such doctrines sparingly.  Id. at 113.  "The burden of demonstrating the appropriateness of equitable tolling...lies with the plaintiff."  Boos v. Runyon, 201 F.3d 178, 185 (2d Cir. 2000).

Plaintiffs argue that their EEOC complaint was timely filed, because the discrimination they were subjected to constituted a continuing violation.  Pls.' Opp., p. 7-8.  However, the continuing wrong doctrine is only applicable to hostile work environment claims, which, by their

_____

Count VI, this Court concludes that Count I is brought only under Title VII and will be addressed as such.

6

very nature, involve repetitive conduct.  Nat'l R.R., 536 U.S. at 115.  The continuing violation

doctrine does not apply to discrete acts of discriminatory conduct.  Id.  The allegations contained

within Plaintiffs' complaints allege discrete acts - chastising Plaintiffs for taking a vacation,

moving Plaintiffs' offices, and denying requests for training.  See generally Id. at 112-14.  I am

therefore not persuaded by Plaintiffs' contentions that all of the complained-of acts which

preceded their terminations are rendered timely by their relationship of those acts to the ultimate

terminations.  I conclude, and respectfully recommend that Your Honor should conclude, that the

continuing violation doctrine does not apply to the discrete acts of discrimination in the

Amended Complaints.

      In the alternative, Plaintiffs argue that their claims should be equitably tolled due to

mental incapacity.  Pls.' Opp., p. 9, 36-37.  "[T]he question of whether a person is sufficiently

mentally disabled to justify tolling of a limitation period is...highly case-specific."  Boos, 201

F.3d at 184.  The burden is high and requires a showing of "extraordinary" circumstances.  Id. at

185.  Neither of the Plaintiffs' Amended Complaints contain any facts or allegations supporting

Plaintiffs' contentions that they were prevented from pursuing their legal rights due to mental

health issues.  Plaintiff DD attached copies of medical reports from various mental health

professionals to her Opposition to Defendants' Motion to Dismiss.  See Pls.' Opp., Ex. C.  After

reviewing these reports, this Court concludes that Plaintiff DD has failed to satisfy the weighty

burden of demonstrating that she is entitled to equitable tolling due to mental incapacity.  One of

the reports states that Plaintiff DD is work disabled and is unable to return to her employment

with the Ives School.  However, the report goes on to say that Plaintiff DD is able to babysit.

The other report contained within Exhibit C states that Plaintiff DD has "Major Depressive

Disorder" and "Posttraumatic Stress Disorder". The report goes on to say that Plaintiff DD is unable to return to her job with the Ives School, but encourages Plaintiff DD to work elswhere. The report also recommends outpatient counseling.

These reports in no way indicate that Plaintiff DD was so mentally incapacitated that she was unable to appreciate or pursue her legal rights. Furthermore, the Court notes that Plaintiff DD pursued a workers' compensation claim, a corresponding state court claim, and a claim with the Equal Employment Opportunity Commission during the time she seeks to have equitably tolled. Additionally, Plaintiff Hakim has not submitted any evidence to support her argument that she is entitled to equitable tolling due to mental disability. As such, I conclude, and respectfully recommend that Your Honor should conclude, that Plaintiffs have not established that equitable tolling due to mental incapacity is appropriate in this case.

My recommendation that Your Honor should refrain from applying either the continuing violation doctrine or equitable tolling does not, however, resolve the issue of timeliness. There are almost no dates within the amended complaints from which the Court could determine whether Plaintiffs' claims are timely. Plaintiff DD filed her complaint with the EEOC on June 23, 2008; Plaintiff Hakim filed her complaint with the EEOC on August 28, 2008. Defs.' Notice of Mot. To Dismiss, Ex. C and D. Therefore, any discriminatory acts that were motivated by Plaintiffs' genders that are alleged to have occurred prior to August 29, 2007, for Plaintiff DD, and prior to November 3, 2007, for Plaintiff Hakim, are untimely. Plaintiff Hakim does not allege any discriminatory conduct based on her gender subsequent to the September 17, 2007,

attack, and therefore Plaintiff Hakim's claim of gender discrimination is time-barred.[3]  As such, I conclude, and respectfully recommend that Your Honor should conclude that Plaintiff Hakim's claim for gender discrimination is time-barred and should be dismissed with prejudice.

I further conclude, and respectfully recommend that Your Honor should conclude, that to the extent that Plaintiff DD has not alleged that any of the discriminatory conduct occurred subsequent to August 29, 2007, Plaintiff DD's claim for gender discrimination is time-barred and should be dismissed with prejudice.[4]

### 2. <u>Count II - Retaliation</u>

42 U.S.C. § 2000e-3 prohibits an employer from retaliating against its employees for opposing an employment practice made unlawful under this subchapter.  42 U.S.C. § 2000e-3 (2003).  Plaintiffs refer to the complaints they filed regarding the inappropriate relationship between Defendants Hickey and Thompson, the lack of training and security provided, the gender discrimination they suffered, and the moving of their offices to the third floor in support of their claim of retaliation.  Similar to the discussion <u>supra</u>, any claims of retaliatory conduct on the part of Defendants must have occurred subsequent to August 29, 2007, in Plaintiff DD's case, and subsequent to November 3, 2007, in Plaintiff Hakim's case, to be timely.  <u>See</u> discussion <u>supra</u> Part II.A.1.a.

---

[3]Plaintiffs assert in their Amended Complaints that they were terminated as a result of their disability, not their gender.

[4]Plaintiff DD is invited to include within her objections, should she file any, specific dates of discriminatory conduct that would make her claim of gender discrimination timely.  In the event that Your Honor disagrees with this recommendation and concludes that Plaintiffs' claims are timely, I respectfully request that Your Honor remand the matter for a further report and recommendation addressing the substance of Plaintiffs' gender discrimination claims.

It appears from Plaintiffs' Amended Complaints that Plaintiffs' offices were moved prior to August 28, 2007.  See generally Pls.' Am. Compl.  As such, Plaintiffs' claims of retaliation based on Defendants' relocation of Plaintiffs' offices is time-barred.   All of Plaintiff Hakim's claims regarding retaliation occurred prior to November 3, 2007, and are therefore untimely. See generally Pl. Hakim's Am. Compl.  Additionally, the remainder of Plaintiff DD's allegations of retaliation including Defendants lack of response to her complaints regarding the relationship between Defendants Thompson and Hickey and the denial of safety training, do not appear, based on the Amended Complaint, to have occurred subsequent to August 29, 2007, and are therefore untimely.  See discussion supra Part II.A.1.

As such, I conclude and respectfully recommend that Your Honor should conclude, that Plaintiffs' claims for retaliation should be dismissed with prejudice as untimely.[5]

### 3.      Count III - Rehabilitation Act

Prior to filing a federal claim under the Rehabilitation Act, persons who believe they have been discriminated against on account of their disability must first seek redress with the EEOC.  Pena v. Potter, 326 Fed.Appx. 33, 34 (2d Cir. 2009).  District courts only have jurisdiction to hear claims that were alleged within the EEOC complaint, "or are based on conduct subsequent to the EEOC charge which is reasonably related to that alleged in the EEOC charge."  Butts, 990 F.2d at 1401 (citing Stewart v. United States Immigration and Naturalization Serv., 762 F.2d 193 (2d Cir. 1985)) (internal quotations omitted).  Although Plaintiffs filed complaints with the EEOC, their complaints alleged violations of Title VII based on gender discrimination and retaliation, not disability discrimination.  See Defts' Mot. To Dismiss, Ex. C,

---

[5]See footnote 4, supra, with regard to Plaintiff DD.

D.[6] Moreover, Plaintiffs allege that they were discriminated against based on their disabilities between September 17, 2007 and January 17, 2008, when they were fired due to their disability. As discussed previously, Plaintiff DD filed her EEOC complaint on June 23, 2008, and Plaintiff Hakim filed her complaint with the EEOC on August 28, 2008. Therefore, Plaintiffs were aware of any discriminatory conduct based on their disability when they filed their complaints with the EEOC. As such, the "reasonably related" exception to filing with the EEOC is not applicable, and the Court is without jurisdiction to hear Plaintiffs' claims of disability discrimination. See Butts, 990 F.2d at 1401 (district court has jurisdiction to hear claims that were not included in EEOC charge if claims are based on conduct that occurred subsequent to the EEOC charge and are reasonably related to the conduct that alleged in the EEOC charge).

Accordingly, I conclude, and respectfully recommend that Your Honor should conclude, that Plaintiffs' claims of discrimination under the Rehabilitation Act should be dismissed with prejudice.

4. **Count VI - Section 1983**

Title 42 U.S.C. 1983 provides that

> every person who, under color of any statute, ordinance, regulation...of any State...subjects or causes to be subjected, any citizen of the United States...to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law.

"Under color" of law has been interpreted to mean the same thing as "state action" under the

---

[6]The Court may consider documents contained outside the four corners of the Amended Complaint where Plaintiff has notice of these documents and the Plaintiff relied on these documents in initiating the action. Cortec Industries, Inc. v. Sum Holding, L.P., 9494 F.2d 42, 48 (2d Cir.1991). Plaintiffs clearly had notice of their EEOC complaints as they filed them. Additionally, Plaintiffs relied on these documents in framing their complaints in this Court, as filing said EEOC complaints was a prerequisite to filing this action.

Fourteenth Amendment.  <u>Rendell-Baker, et al. v. Kohn, et al.</u>, 457 U.S. 830, 838 (1982).  In determining whether a person is subject to suit under § 1983, the pertinent question is whether the conduct that allegedly infringed on someone's federal rights can be "fairly attribut[ed] to the State."  <u>Id</u>. (quoting <u>Lugar v. Edmondson Oil Co.</u>, 457 U.S. 922, 937 (1982)) (internal quotations omitted).  In making that determination, courts look at several factors: (1) the extent to which the private entity relies on government funds; (2) the degree of governmental regulation of the entity; (3) whether the entity performs a public function; and (4) whether the entity and the government maintain a symbiotic relationship.  <u>Rendell-Baker</u>, 457 U.S. at 840-843.

Plaintiffs allege that they were denied due process under § 1983 when Defendants failed to respond to Plaintiffs' complaints about the alleged inappropriate relationship between Defendants Thompson and Hickey and when Defendants discriminated against Plaintiffs due to their disability and terminated their employment without the opportunity to be heard.  Pls.' Compl. ¶ 178-184.  Plaintiffs do not assert that Defendants are state actors per se, but rather that the Defendants engage in state action, and are therefore liable under § 1983.  However, Plaintiffs' claims regard Defendants' employment decisions.  Therefore, the appropriate inquiry becomes whether the Defendants' employment decisions were made under color of law.  To support this conclusion, Plaintiffs point out that Defendants received substantial public funds, performed a function typically relegated to the states, that being the education and rehabilitation of youths, and were regulated by the state.

Plaintiffs' allegations are insufficient to render Defendants' actions, as alleged in this count, state action.  The Supreme Court has clearly and repeatedly held that employment decisions are not state action, despite the receipt of public funds and extensive state regulation.

Rendell-Baker, 457 U.S. at 840-41 ("receipt of public funds does not make the discharge decisions acts of the State...decisions to discharge the petitioners were not compelled or even influenced by state regulation"); Blum v. Yaretsky, 457 U.S. 991, 1007-1008; Jackson v. Metropolitan Edison Co., 419 U.S. 345, 350 (1974).  Additionally, while a private entity might perform a public function, this does not make all of its actions state action.  Rendell-Baker, at 842.  Ultimately, Plaintiffs fail to allege that the state had any role in Defendants' employment decisions.  Rendell-Baker, at 840 (states can only "be held responsible for a private decision when it has exercised coercive power or has provided such significant encouragement, either overt or covert, that the choice must in law be deemed to be that of the State").  While Defendants may have been state actors in connection with the services they provided to their residents, they were not state actors with respect to their employment decisions.[7]  See Sherlock v. Montefiore Medical Center, 84 F.3d 522, 527 (2d Cir. 1996).

Accordingly, I conclude, and respectfully recommend that Your Honor should conclude, that Plaintiff's claim for due process violations under § 1983 should be dismissed with prejudice.

### 5.    Count XIII - 14th Amendment

"Similarly, the Fourteenth Amendment, which prohibits the states from denying federal constitutional rights...applies to acts of the states, not to acts of private persons or entities." Rendell-Baker, 457 U.S. at 837.  The Fourteenth Amendment does not, however, create a cause of action.  Rather it is through 42 U.S.C. § 1983 that violations of the Fourteenth Amendment are

---

[7]The cases Plaintiffs cite in their opposition are inapplicable to this case.  While those courts, whose decisions are not binding on this Court, conclude that the defendants in those cases were state actors, those courts did so as it pertained to their role in educating and rehabilitating youth.  The Courts did not determine that the defendants were state actors in executing employment decisions.

actionable.  Id.  While Plaintiff's allegations in Count XIII are based on gender discrimination rather than disability discrimination, the allegations still involve personnel decisions.  Again, Plaintiff fails to make any allegation that the State was involved in the Defendants' personnel decisions.  Plaintiffs' claims that Defendants discriminated against women by admitting sexual or violent offenders into the Ives School fail to include any allegation that such action was state action.  On the contrary, Plaintiffs appear to allege that Defendants had financial motivations and made that decision independently, and without any consultation or input from the State.  Pls.' Am. Compl. ¶ 48-49.  As to Plaintiffs' claims regarding the lack of safety training, Plaintiffs have failed to allege any disparate impact, see Trezza v. The Hartford, Inc., No. 98-CV-2205, 1998 WL 912101, at *7 (S.D.N.Y. Dec. 30, 1998), as well as failing to allege any state action.  Lastly, Plaintiffs fail to establish how moving offices was an adverse employment action or a state action.  Moreover, by Plaintiffs' own admission, this move was in retaliation for Plaintiffs reporting an inappropriate relationship between Defendants Thompson and Hickey, not because of Plaintiffs' gender.

As such, I conclude, and respectfully recommend that Your Honor should conclude, that Plaintiffs' claim in Count XIII should be dismissed with prejudice.

**6.    Count V - Americans with Disabilities Act**

Under the Americans with Disabilities Act ("ADA"), claimants are required to file their grievances with the EEOC within 300 days of the allegedly discriminatory conduct.  Hodge v. New York Coll. of Podiatric Med., 157 F.3d 164, 166 (2d Cir. 1998).  Exhaustion of this administrative remedy is a precondition to filing a claim for discrimination under the ADA in federal court.  Pearson-Fraser v. Bell Atlantic, No. 01-CV-2343, 2003 WL 43367, at *2

(S.D.N.Y. Jan. 6, 2003).  However, like the Rehabilitation Act, the ADA provides an exception to this prerequisite when the claim is "based on conduct subsequent to the EEOC charge" and "is reasonably related to that alleged in the EEOC charge."  Butts, 990 F.3d at 1401.

Again, while Plaintiffs filed charges with the EEOC, Plaintiffs only filed under Title VII, alleging gender discrimination and retaliation.  Plaintiffs did not file claims for violations of the ADA or for discrimination based on disability.[8]  Furthermore, as previously noted, Plaintiff DD filed her claim with the EEOC on July 7, 2008, and Plaintiff Hakim filed her claim on August 28, 2008, well after Plaintiffs would have been discriminated against based on their disability, and after Plaintiffs were ultimately fired, allegedly because of their disabilities.  Therefore, the reasonably related exception does not apply to Plaintiffs' claims, and this Court is without jurisdiction to hear these claims.[9]

As such, I conclude and respectfully recommend that Your Honor should conclude, that Plaintiffs' claim for discrimination under the ADA should be dismissed with prejudice.  Should Your Honor disagree and conclude that Plaintiffs' claims for discrimination should not be dismissed, I conclude and respectfully recommend that Your Honor should conclude, that

---

[8]The EEOC charge form contains a box specifically for persons alleging discrimination under the ADA.  Neither Plaintiff marked the box on their EEOC forms.

[9]If Your Honor were to find that Plaintiffs' ADA claims were based on conduct subsequent to the EEOC charge, the undersigned would still conclude, and recommend that Your Honor should conclude, that the exception is inapplicable because the conduct was not reasonably related to the conduct alleged in the EEOC charge.  None of the three situations that render conduct reasonably related are present in this case.  Plaintiffs were not *pro se* when they filed their claims with the EEOC, Plaintiffs were not alleging retaliation by an employer against an employee for filing an EEOC charge, and Plaintiffs did not allege that the disability discrimination was carried out in the same manner as the discrimination alleged in the EEOC charge.  Butts, 990 F.3d at 1402-1403.

Plaintiffs' claims of discrimination in violation of the ADA should be dismissed with prejudice as to the individually named Defendants, as the ADA does not provide for individual liability. Corr v. MTA Long Island Bus, No. 98-CV-9417, 1999 WL 980960, at *1, 2 (2d Cir. Oct. 7, 1999) (citing Tomka v. Seiler, 66 F.3d 1295, 1314 (2d Cir. 1995)).

Furthermore, to the extent that Plaintiff DD is unable to establish that Defendants engaged in any discriminatory behavior motivated by Plaintiff DD's disability subsequent to August 28, 2007, I conclude, and respectfully recommend that Your Honor should conclude, that Your Honor should dismiss this case with prejudice.

**B.    Plaintiffs' State Law Claims**

I conclude, and respectfully recommend that Your Honor should conclude, that because the Amended Complaints fail to state any federal claims, as set forth supra, this Court should decline to exercise supplemental jurisdiction over Plaintiffs' state law claims, and those claims should also be dismissed.  See Kolari v. New York-Presbyterian Hosp., 455 F.3d 118, 121-22 (2d Cir. 2006); Weathers v. Millbrook Cent. Sch. Dist., 486 F.Supp.2d 273, 275-76 (S.D.N.Y. 2007). In the event that Your Honor should disagree with this recommendation, I address the state law claims below.

**1.    Intentional Torts**

Intentional tort claims, including claims for intentional infliction of emotional distress, prima facie tort, assault, and battery, are governed by a one-year statute of limitations.  N.Y. CPLR § 215(3); Gallagher v. Director's Guild of Am., Inc., 144 A.D.2d 261, 262 (1st Dep't 1988); Della Villa v. Constantino, 246 A.D.2d 867 (3d Dep't 1998).  Plaintiffs concede that they did not file this cause of action within that one-year time limit.  See Pls.' Opp., p. 20.  This Court

16

is unpersuaded by Plaintiffs' arguments that they are entitled to equitable tolling.  First, the majority view within this jurisdiction is that "the statute of limitations for state tort claims is not tolled during the pendency of an administrative discriminatory charge."  Kolesnikow v. Hudson Valley Hosp, 622 F.Supp.2d 98, 122 & n.19 (S.D.N.Y. May 20, 2009).  Second, this Court finds insufficient evidence to support Plaintiffs' claims that they are entitled to equitable tolling due to mental defect.   See discussion supra Part II.A.1.  Therefore, Plaintiffs' intentional tort claims are untimely.

Accordingly, I conclude, and respectfully recommend that Your Honor should conclude, that Plaintiffs' intentional tort claims should be dismissed with prejudice.[10]

### 2.   **Plaintiffs' Negligence Claims**

"In New York, recovery for accidental injuries arising out of and in the course of employment, including injuries caused by an employer's negligence, is governed by the Workers' Compensation Law."  Arroyo v. Westlb Admin., Inc., 54 F.Supp.2d 224, 232 (S.D.N.Y. June 16, 1996) (quoting O'Brien v. King World Prods., Inc., 669 F.Supp. 639, 641 (S.D.N.Y. Sept. 18, 1987) (quotation marks omitted).  Section 11 of the Workers' Compensation Law provides that recovery under this section is to be the sole and exclusive remedy for employees.  Acevedo, et al. v. Consolidate Edison Co. of New York, Inc., 189 A.D.2d 497, 500 (1st Dep't 1993).  An exception to this exclusivity provision exists in the case of intentional torts perpetrated by or at the direction of the employer.  Arroyo, 54 F.Supp.2d at 232 (internal quotation marks omitted).

---

[10]This includes Plaintiff DD's claims for intentional infliction of emotional distress and battery, as well as both Plaintiffs' claims for assault and prima facie tort.

> To sufficiently plead an intentional tort that will neutralize the statute's exclusivity there must be alleged an intentional or deliberate act by the employer directed at causing harm to the particular employee.

Acevedo, 189 A.D.2d at 500-501.

### a.   Negligent Supervision and Negligent Infliction of Emotional Distress[11]

Negligent supervision, by its very definition, is not an intentional tort.  (Negligence: "The failure to exercise the standard of care that a reasonably prudent person would have exercised in a similar situation;" Intentional Tort: "A tort committed by someone acting with general or specific intent." Black's Law Dictionary 470, 713 (2d ed. 2001)).  Likewise, negligent infliction of emotional distress is a claim sounding in negligence.  As such, the proper venue for Plaintiffs' claims of negligent supervision and negligent infliction of emotional distress is the Workers' Compensation Commission.

### b.   Failure to Warn

Although Plaintiffs do not specify whether the alleged conduct by Defendants in their failure to warn claims was intentional or negligent, "the allegation that an employer failed to warn of dangers in the workplace does not sound in intentional tort."  Forjan v. Leprino Foods, Inc., No. 06-CV-0428, 2006 WL 3623496, at *2 (2d Cir. Dec 12, 2006); see also Acevedo, 189 A.D.2d at 596.  Accordingly, the intentional tort exception to the exclusivity provision of the New York Workers' Compensation law is inapplicable to this claim.

 Plaintiffs argue that the workers compensation law does not provide for adequate

---

[11]The claim of negligent infliction of emotional distress is only asserted by Plaintiff Hakim.

recovery for Plaintiff's injuries.  This argument is supported only by rhetoric and citation to proposed legislation.

Therefore, I conclude, and respectfully recommend that Your Honor should conclude, that Plaintiff's claims for negligent supervision, negligent infliction of emotional distress, and failure to warn should be dismissed with prejudice.

### 3.   Hostile Work Environment

Preliminarily, this claims seems to be pled as both a federal claim under Title VII and a state claim under the New York State's Human Rights Law ("NYSHRL").  Pl. DD's Am. Compl. ¶ 275.  To the extent that this claim is a federal claim under Title VII, the Court finds that the continuing wrong doctrine applies to claims of hostile work environment.  Therefore, assuming that this claim is sufficiently pled, the continuing wrong doctrine would make Plaintiff DD's claim timely, provided that she can establish that one of the harassing incidents occurred subsequent to August 28, 2007.  Nat'l R.R., 536 U.S. at 115.  However, as Plaintiff Hakim's claim of hostile work environment is based on Defendants' allegedly discriminatory conduct against women, the failure to provide a safe work environment, and the office being moved to the third floor, Plaintiff Hakim's claim is time-barred as all of those acts occurred prior to November 3, 2007. See discussion supra Part II.A.1.a.

To the extent that Plaintiffs' claims are brought under the NYSHRL, Plaintiffs have waived their right to this remedy by bringing an action under New York Labor Law § 740 for illegal termination in Count XII.  N.Y. Lab. Law § 740(7); Owitz v. Beth Israel Med. Center, 1 Misc.3d 912(A), 2004 WL 258087, at *3 (N.Y. County 1994); Collette v. St. Luke's Roosevelt Hosp., 132 F.Supp.2d 256, 274 (S.D.N.Y. 2001).  Plaintiffs' hostile work environment and

illegal termination claims arise out of the same facts and same conduct. Both claims allege that Plaintiffs were retaliated against for reporting discriminatory behavior in the workplace, for reporting an unsafe work environment, and for reporting other assorted unlawful conduct. See Pl. DD's Am. Compl. ¶ 259-277 as compared to ¶ 278-284. As such, Plaintiffs are barred from asserting a hostile work environment claim under the NYSHRL, having exercised their right to bring a claim under New York Labor Law § 740.

Therefore, I conclude, and respectfully recommend that Your Honor should conclude, that Plaintiff Hakim's claim for hostile work environment pursuant to Title VII should be dismissed with prejudice. I further conclude, and respectfully recommend that Your Honor should conclude, that Plaintiff DD's claim for hostile work environment pursuant to Title VII should be dismissed with prejudice.[12] Last, I conclude, and respectfully recommend that Your Honor should conclude, that Plaintiffs' claims for hostile work environment pursuant to the NYSHRL should be dismissed with prejudice.

### 4.   Illegal Termination

New York Labor Law Section 740(2) provides that

> [a]n employer shall not take any retaliatory personnel action against an employee because such employee does any of the following: (a) discloses, or threatens to disclose to a supervisor or to a public body an activity, policy or practice of the employer that is in violation of law, rule or regulation which violation creates and presents a substantial and specific danger to the public health or safety...(c) objects to, or refuses to participate in any such activity, policy or practice in violtation of a law, rule or regulation.

The statute goes on to say that an employee who has suffered a retaliatory employment action in violation of this statute may institute a civil action within one year of the alleged retaliatory

---

[12]See footnote 4, supra.

conduct.  N.Y. Lab. Law § 740(4).   Gray v. Shearson Lehman Brothers, Inc., 947 F.Supp. 132, 137 (S.D.N.Y. Dec. 9, 1996).  In order to sustain such a claim, plaintiffs are required to "specify the law, rule or regulation that has actually been violated by defendants' behavior" and "describe how defendants' activities have endangered the health or safety of the public."  Owitz, 2004 WL 258087, at *2.  Furthermore, there must be an actual, not possible, and substantial present danger to the public.  A plaintiff's reasonable belief that there is an actual and substantial threat to the public's health and safety is not enough.  Remba v. Fed'n Employee and Guidance Serv., 149 A.D.2d 131, 135 (1st Dep't 1989).   Failure to allege both of these element requires dismissal of the action.  Owitz, 2004 WL 258087, at *2.

Plaintiff argues in her opposition to Defendants' motion to dismiss that Defendants' actions were in violation of N.Y. Labor Law § 27-b(6), along with other statutes.  Pls.' Opp. p. 38.  Drawing all inferences in Plaintiff's favor, Count XIV in Plaintiffs' Amended Complaints does allege a violation of Section 27-b(6).  As such, taking the complaint as a whole, the undersigned will consider that requirement satisfied.

However, Plaintiff's Amended Complaint fails to specify how Defendants' alleged violation of N.Y. Labor Law Section 27-b(6) poses an actual and substantial present danger to the public.  Plaintiff again relies on conclusory allegations that Defendants' discriminatory conduct poses such a risk to the public health and safety.  This Court fails to see what kind of a substantial and specific present danger Defendants' allegedly discriminatory actions pose to the public's health and safety.

Therefore, I conclude, and respectfully recommend that Your Honor should conclude, that Plaintiff's claim for illegal termination should be dismissed without prejudice.

5.    **Count XIV - New York Labor Law 27-b(6)**

New York Labor Law 27-b delineates public employer's duties to maintain workplace violence protection programs to minimize the incidence of workplace violence.  Subsection 6 discusses the process by which an employee is to report an alleged violation of Section 27-b.  In addition, subsection 6 prohibits employers from taking retaliatory action toward employees who initiate an investigation or accompanies the commissioner while he/she is conducting an investigation of the employer's programs.  Defendants argue that New York Labor Law § 27-b does not provide for a private right of action.  See Shaw v. Baldowski, 747 N.Y.S.2d 136, 141 (N.Y.S. Albany County 2002).  However, Shaw deals with § 27-a, which is an entirely different statute, containing different statutory language, and serving a different legislative purpose from § 27-b.  The Court is likewise unpersuaded by Plaintiffs' argument that § 215 creates a private right of action for violations of § 27-b.  § 215 provides a private right of action for employees who have been discriminated or retaliated against by their employers for reporting the employer's violations of New York Labor Law.  Plaintiffs' claims under this Count allege a substantive violation of § 27-b, not that they were retaliated or discriminated against for reporting Defendants' alleged violation of § 27-b.  The legislature provided a method by which employees could report alleged violations of § 27-b and did not include a private cause of action within that remedy.  In addition, the undersigned has been unable to find any statute or case law creating a private right of action for alleged substantive violations of § 27-b.

Therefore, I conclude, and respectfully recommend that Your Honor should conclude, that this Count should be dismissed with prejudice.

**CONCLUSION**

For the foregoing reasons, I conclude, and respectfully recommend that Your Honor should conclude, that Plaintiffs' federal claims under Counts I, II, III, IV, V, XI, and Count XIII, should be dismissed with prejudice.

Accordingly, I conclude and respectfully recommend that Your Honor should conclude,

that because the Amended Complaints fail to state any federal claims, this Court should decline to exercise supplemental jurisdiction over Plaintiffs' state law claims, and those claims should be dismissed as well. See Kolari v. New York-Presbyterian Hosp., 455 F.3d 118, 121-22 (2d Cir. 2006). If Your Honor should disagree with this recommendation and choose to retain supplemental jurisdiction over Plaintiffs' state law claims, then I conclude, and respectfully recommend that Your Honor should conclude, that Plaintiffs' state claims under Counts VI, VII, VIII, IX, X, XI, XII, XIV, and XV should be dismissed with prejudice.

## NOTICE

Pursuant to 28 U.S.C. § 636(b)(1), as amended, and Fed. R. Civ. P. 72(b), the parties shall have ten (10) days, plus an additional three (3) days, pursuant to Fed. R. Civ. P. 6(d), or a total of thirteen (13) working days, see Fed. R. Civ. P. 6(a), from the date hereof, to file written objections to this Report and Recommendation. Such objections, if any, shall be filed with the Clerk of the Court with extra copies delivered to the chambers of The Honorable Cathy Seibel at the United States Courthouse, 300 Quarropas Street, White Plains, New York, 10601, and to the chambers of the undersigned at the same address.

Failure to file timely objections to this Report and Recommendation will preclude later appellate review of any order of judgment that will be entered.

Requests for extensions of time to file objections must be made to Judge Seibel.

Dated: October 23, 2009

White Plains, New York

Respectfully Submitted,

23

Lisa Margaret Smith
United States Magistrate Judge
Southern District of New York

A copy of the foregoing Report and Recommendation has been sent to the following:

The Honorable Cathy Seibel, U.S.D.J.

24